**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

STEVEN ULIVARRI,

Plaintiff,

vs. No. 1:24-cv-675-DHU-LF

WALGREEN CO.,

Defendant.

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant Walgreen Co.'s ("Walgreens") Renewed Motion for Summary Judgment (Doc. 52). The Court held a hearing on this motion on July 8, 2026, after the briefing was completed. At that hearing, the Court granted the motion in part, denied the motion in part, and reserved ruling on the motion as it relates to Plaintiff's claim of race discrimination in his termination. *See* July 8, 2026 Motion Hearing Transcript at 55:21-60:25.[1] The Court now addresses that pending claim. Having reviewed the parties' arguments and the relevant and applicable law, the Court now concludes that summary judgment must be **GRANTED** for Walgreens on Plaintiff's race discrimination claim. In sum, the Renewed Motion for Summary Judgment (Doc. 52) will be **GRANTED IN PART** and **DENIED IN PART**.

[1] Hereafter, this Memorandum Opinion and Order cites to the court reporter's unofficial transcript of the Motion Hearing as "Mot. Hr'g Tr. at page:line(s)." Page citations are subject to change on the official, edited version of the transcript.

## I.
## FACTUAL BACKGROUND & PROCEDURAL HISTORY

Plaintiff Steven Ulivarri worked for Walgreens for about thirty-five years, twenty-two of which he spent as a store manager of the 24-hour location on Menaul Boulevard in Albuquerque, New Mexico (the "Menaul Store"). Doc. 22, Am. Compl. ¶¶ 2-3. After he was terminated in January 2023, Ulivarri filed suit against Walgreens, alleging that he was wrongfully terminated for misconduct based on his act of closing the inside of the Menaul Store (but not the pharmacy/drive-thru) during nighttime hours. *Id.* ¶ 3. Ulivarri alleges that the store closures were authorized by his supervisor, District Manager Ray St. John, after Ulivarri reported staffing issues related to safety concerns for himself and the staff members who did show up. *Id.* ¶¶ 3-4. Ulivarri believes he was forced out of the company due to race- and age-based discrimination and that he was passed over in favor of younger, non-Hispanic employees. *Id.* ¶ 6. Ulivarri also alleges that Walgreens was retaliating against him for speaking up about safety issues and employee wellbeing, and for reports and complaints he made regarding both discrimination and workplace safety violations. *Id.* Specifically, Ulivarri's complaint alleges that he previously filed a complaint after being passed over for a lateral transfer in favor of a younger woman, Krysta Martinez, with much less experience. *Id.* ¶ 5. Ulivarri also alleges he reported his white, younger co-worker, pharmacy manager Nicholas Kestell, for fraudulent customer complaint resolutions, and that while Ulivarri was terminated for violating policy, Kestell was not. *Id.* ¶¶ 23-24.

The operative complaint asserts claims for (1) race discrimination and retaliation for reporting the same in violation of Title VII; (2) age discrimination and retaliation for reporting the same in violation of the Age Discrimination in Employment Act (ADEA); (3) common law retaliation/retaliatory discharge for reporting workplace safety violations; (4) common law

retaliation/retaliatory discharge for reporting pharmacy irregularities and violations; and (5) intentional infliction of emotional distress. *See id.* ¶¶ 53-98.

For its part, Defendant Walgreens asserts that Ulivarri was fired because of repeated unauthorized store closures during overnight hours. Before the events leading up to Mr. Ulivarri's termination, he had been issued a Written Warning in August 2016 for failing to complete a food safety audit and a Final Written Warning in 2019 for failing to perform management duties in compliance with company policy. Doc. 52-1 at 3, Undisputed Material Fact ("UMF") 11 (citing Ulivarri Dep. 75:24-76:3). According to Walgreens, their investigation into the store closures leading to Ulivarri's termination revealed 105 closures, only fourteen of which were reported to Mr. St. John. UMFs 35, 38 (disputed by Plaintiff). In addition, the investigation revealed there was sufficient staff during eighty closures, and security was present during ten of the closures. UMF 37. Because Plaintiff had reported the closures were due to insufficient staffing and security concerns, Walgreens also found Ulivarri's statements during the investigation were not credible. UMF 56. He was terminated on January 11, 2023, based on these findings. UMF 62.

Walgreens filed its first Motion for Summary Judgment on April 21, 2025. Doc. 37. This Court denied that motion after a hearing due to deficient briefing from both parties—Defendant's motion misrepresented some of the evidence cited, and Plaintiff failed to properly respond to the Undisputed Material Facts in the Motion. *See* Docs. 48, 49. The Court granted Defendants leave to refile. *Id.*

## II. RENEWED MOTION FOR SUMMARY JUDGMENT

On October 27, 2025, Walgreens filed a Renewed Motion for Summary Judgment, seeking summary judgment in its favor on Plaintiff's claims. Doc. 52. In it, Walgreens sets forth eighty-three purportedly undisputed material facts addressing Plaintiff's employment with Walgreens,

Walgreens' minimum staffing guidelines, Plaintiff's (allegedly) unauthorized store closures and Walgreens' internal investigation, Plaintiff's 2021 transfer application and complaint, and Plaintiff's 2022 involvement in the investigation of the store's pharmacy manager, Nicholas Kestell. Doc. 52-1 at 1-14. Plaintiff Ulivarri filed a Response, Doc. 56, and Walgreens replied, Doc. 57.

The Court held a hearing on the renewed motion on July 8, 2026. After hearing argument from both parties on each of Plaintiff's claims, and for the reasons stated on the record at the hearing, the Court made the following rulings:

1. Summary judgment was **GRANTED** for Defendant Walgreens on Plaintiff's Title VII and ADEA retaliation claims;
2. Summary judgment was **GRANTED** for Walgreens on Plaintiff's intentional infliction of emotional distress claim;
3. Summary judgment was **DENIED** as to Plaintiff's age discrimination claim with respect to his termination; and
4. Summary judgment was **DENIED** as to Plaintiff's common law retaliatory discharge claim.[2]

Mot. Hr'g Tr. at 55:21-60:25.

[2] Plaintiff's Amended Complaint includes common law retaliatory discharge claims based upon Mr. Ulivarri's reports of workplace safety concerns, Am. Compl. ¶¶ 72-79, *and* pharmacy irregularities and violations, *id.* ¶¶ 80-88. Walgreens' Renewed Motion addresses only the former claim, and summary judgment was denied. The latter claim, regarding Ulivarri's report of pharmacy irregularities and violations, was not addressed by the Renewed Motion and therefore also survives for trial.

The Court also noted that Walgreens' Renewed Motion does not seek summary judgment on Plaintiff's claim of age discrimination in his denied transfer request. Mot. Hr'g Tr. at 19:21-22:8. That claim therefore also survives for trial.

The Court reserved ruling on Plaintiff's claim of race discrimination in his termination. More specifically, the Court indicated it would consider whether Plaintiff has met the third requirement to establish a prima facie case of race discrimination by showing that he was terminated under circumstances giving rise to an inference of discrimination.[3] If so, this claim survives summary judgment, as genuine issues of material fact preclude summary judgment as it relates to the remaining steps of the *McDonnell Douglas* analysis. Mot. Hr'g Tr. at 58:10-11, 59:6-60:25.

## III. LEGAL STANDARD

A party is entitled to summary judgment "if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Hamric v. Wilderness Expeditions, Inc.*, 6 F.4th 1108, 1121 (10th Cir. 2021) (quoting Fed. R. Civ. P. 56(a)). The movant bears the initial burden of "'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548 (1986). Once the moving party has met this burden, the nonmoving party must identify specific facts that show the existence of a genuine issue of material fact requiring trial on the merits. *Bacchus Indus., Inc. v. Arvin Indus. Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). A dispute is "genuine" if there is sufficient

[3] The first is undisputed; both parties recognizes that Ulivarri is a member of protected class. Am. Compl. ¶ 54; Doc. 23, Answer ¶ 54 (admitting the allegation that Ulivarri is Hispanic). The second—whether Ulivarri was satisfactorily performing his job—is disputed. Mot. Hr'g Tr. at 59:6-60:25. Therefore, summary judgment is not appropriate on the basis of either of the first two requirements.

evidence on each side so that a rational trier of fact could resolve the issue either way. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986). "A fact is material if it can have an impact on the outcome of the lawsuit[.]" *New Mexico Oncology & Hematology Consultants, Ltd. v. Presbyterian Healthcare Servs.*, 994 F.3d 1166, 1171 (10th Cir. 2021). The district court's role in analyzing a motion for summary judgment is to simply "assess whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Sierra Club v. El Paso Gold Mines, Inc.*, 421 F.3d 1133, 1150 (10th Cir. 2005). At this stage, the nonmoving party is entitled to all reasonable inferences from the record. *Water Pik, Inc. v. Med-Systems, Inc.*, 726 F.3d 1136, 1143 (10th Cir. 2013).

## IV.
## DISCUSSION

This Memorandum Opinion and Order adopts the rulings and reasoning stated on the record at the July 8 hearing in this matter. The Court writes only to address the remaining claim on which it reserved ruling—Plaintiff's claim of race discrimination in his termination.

### A. Legal Framework

Despite Plaintiff's argument to the contrary, Doc. 56 at 18, there is no direct evidence of discrimination here. Ulivarri's federal discrimination and retaliation claims are therefore analyzed under the framework laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973):

> "Under this framework, [the plaintiff] must first establish a prima facie case of discrimination and retaliation. If [he] establishes this, the burden shifts to the [defendant] to articulate some legitimate, nondiscriminatory reason for its action. Should the [defendant] meet this burden, [plaintiff] must be afforded a fair opportunity to show that [defendant's] stated reason was in fact pretext."

*Mauldin v. Driscoll*, 136 F.4th 984, 993 (10th Cir. 2025). *See also Hinds v. Spring/United Mgmt. Co.,* 523 F.3d 1187 (10th Cir. 2008).

To establish a prima facie claim for discrimination, a plaintiff generally must demonstrate that: (1) he was a member of a protected class; (2) he was qualified and satisfactorily performing his job; and (3) he was terminated or otherwise subject to adverse employment action under circumstances giving rise to an inference of discrimination. *Salguero v. City of Clovis*, 366 F.3d 1168, 1175 (10th Cir. 2004). At the summary judgment stage, the plaintiff has the burden of establishing a prima facie case by a preponderance of the evidence. *Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005).

A "variety of circumstances" can give rise to an inference of discriminatory motive, including: (1) actions/remarks by decisionmakers that reflect animus; (2) preferential treatment given to employees outside the protected class; (3) pattern of recommending plaintiff for positions for which he is not qualified and failure to surface plaintiff's name for positions for which he is qualified; (4) timing/sequence of events leading to the termination; (5) continuing to seek applicants to fill the position after plaintiff's termination. *Id.* at 1101 (citing *Chertkova v. Connecticut Gen. Life Ins.*, 92 F.3d 81, 91 (2d. Cir 1996)).

**B. Analysis**

As explained above, it is undisputed that Ulivarri is Hispanic and therefore a member of a protected class for the purposes of race discrimination. Doc. 22, Am. Compl. ¶ 54; Doc. 23, Answer ¶ 54 (admitting the allegation that Ulivarri is Hispanic). This supports the first prong of his prima facie case of race discrimination.

There is a genuine dispute of material fact which precludes summary judgment on the second prong of Ulivarri's prima facie case, whether he was qualified and satisfactorily performing his job. In its Renewed Motion for Summary Judgment, Walgreens argues that Plaintiff's prima facie case fails because he was not performing his job satisfactorily. Doc. 52-1 at 15, 17-18. As

evidence of this, Walgreens points to evidence that Plaintiff violated Walgreens policy by closing the stores overnight without informing his supervisor, without calling the Security Operations Center ("SOC"), and, during most of the closures, when there was adequate staffing to keep the store open. *Id.*; *see also* UMFs 55-62. Ulivarri does not dispute that the store was regularly closed overnight, but he asserts that the closures were authorized by his supervisor, Ray St. John, and motivated by safety concerns from staff. *See generally* Doc. 56-1; Doc. 56-2 at 1-2. In support of this, Plaintiff cites to his own deposition and a declaration submitted by him in response to Walgreens' Renewed Motion, as well as Mr. St. John's deposition and written statement. *See* Doc. 56, Response to UMFs 35-36, 44, 46, 52, 55-58; Doc. 56-1; Doc. 56-2, Additional Statement of Facts ("AUMFs") U-FF, NN, SS-TT. This evidence is sufficient to raise a dispute of fact which bears directly on whether Ulivarri was satisfactorily performing his job.[4] Summary judgment is therefore not appropriate on this basis.

The Court now addresses whether Plaintiff has established the third prong of his prima facie case, whether he was terminated under circumstances giving rise to an inference of discrimination. In its Renewed Motion, Walgreens argues that Ulivarri's prima facie claim fails on this prong because he did not identify any similarly situated employees outside his protected class who engaged in similar misconduct but were not terminated.[5] Doc. 52-1 at 15-16. In response,

---

[4] At the hearing in this matter, counsel for Walgreens agreed there is a dispute about whether Mr. Ulivarri had authorization from Mr. St. John to close the stores. Mot. Hr'g Tr. at 6:24-7:1.

[5] Showing that a similarly-situated person outside the protected class was not disciplined in the same manner for similar conduct is just one sufficient—but not necessary—means of demonstrating "circumstances giving rise to an inference of discrimination." *Sorbo v. UPS*, 432 F.3d 1169, 1173 (10th Cir. 2005). Ulivarri's claim does not automatically fail, then, for failure to identify such a similarly situated employee. However, because Ulivarri does not claim to have presented any other evidence supporting an inference of discrimination, the Court will only address the question of whether he established that one or more similarly situated employees outside his protected class were treated differently for comparable conduct.

Plaintiff does not directly address his race discrimination claim, and the only evidence he points to in support of an inference of discrimination relates to his age discrimination claim. *See* Doc. 56 at 20-21; Doc. 56-2 at 18. However, at the hearing in this matter, counsel for Mr. Ulivarri pointed to the evidence in the record that Mr. St. John was not terminated for his role in the store closures and that a pharmacy manager, Nicholas Kestell, was also not terminated for booking fictitious vaccine appointments.[6] Mot. Hr'g Tr. at 28:23-33:21. Plaintiff argued that Mr. St. John and Mr. Kestell are similarly situated employees outside the protected racial class who were not terminated for similar conduct, giving rise to an inference of discrimination. *Id.*

As mentioned above, one method by which a plaintiff can demonstrate an inference of discrimination is to show that the employer treated similarly situated employees outside the protected class more favorably. *Luster v. Vilsack*, 667 F.3d 1089, 1095 (10th Cir. 2011) (citation omitted). "Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline." *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997). In determining whether employees are similarly situated, the Tenth Circuit has instructed courts to "compare the relevant employment circumstances, such as work history and company policies, applicable to the plaintiff and the intended comparable employees." *Id.* A plaintiff must also establish that differential treatment occurred and rule out nondiscriminatory explanations for the differential treatment. *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1121 (10th Cir. 2007) (citing *E.E.O.C. v. Flasher Co., Inc.*, 986 F.2d 1312, 1320 (10th Cir. 1992)). For example, "even employees who are similarly situated must

[6] Both employees were issued Final Written Warnings for their respective policy violations. UMF 63 (citing Ex. 4, St. John Decl. at ¶ 14; Ex. 5, Ulivarri Dep. 165:6-16; Ex. 16, Rusher Dep. 41:11-14, 42:3-16); UMF 81 (citing Ulivarri Dep. 108:10-15).

have been disciplined for conduct of 'comparable seriousness' in order for their disparate treatment to be relevant." *McGowan v. City of Eufala*, 472 F.3d 736, 745 (10th Cir. 2006) (citation omitted).

At the outset, the Court notes that Plaintiff has failed to meet his burden to show that St. John and Kestell are not members of the protected class. As to Mr. St. John, Walgreens claims in its Renewed Motion that St. John is Hispanic. UMF 7. However, Walgreens does not cite any evidence in support of this proposition. At the hearing, both parties seemed to acknowledge they do not know Mr. St. John's race. Mot. Hr'g Tr. at 9:16-24, 30:22-32:10. Plaintiff's counsel relied only on speculation that St. John is white based upon his name and how he was perceived. *Id.* at 32:3-10. This is not enough at the summary judgment stage. *See Plotke*, 405 F.3d at 1099 (explaining in the summary judgment context that the burden of production is on the plaintiff to establish a prima facie case of discrimination).

In contrast to St. John, Plaintiff alleges in his Amended Complaint that Kestell is white. Am. Compl. ¶¶ 23-24, 47. However, Walgreens did not admit this fact, and Plaintiff has produced no evidence confirming this. *See* Doc. 23 ¶¶ 23-24, 47; Doc. 56-1 at 7 (Ulivarri Declaration ¶ 47) (stating that Kestell was under 40 but not addressing his race). This, too, is insufficient. But because Plaintiff at least made the allegation and Walgreens has not outright disputed it, the Court will assume without deciding that Kestell is white.

Nevertheless, for the reasons described below, Plaintiff has not demonstrated that Mr. Kestell is a similarly situated employee to Mr. Ulivarri. While Kestell and Ulivarri were both subject to Walgreens' policies, including its disciplinary policy, UMF 2, there is no evidence that they dealt with the same supervisor. In fact, the identity of Mr. Kestell's supervisor is not clear from the record. Mr. Kestell was the Menaul Store's pharmacy manager. His supervisor may have been Jude Otero, the "Healthcare Supervisor," who initiated the investigation against Kestell. UMF

78. Or his supervisor may have been Plaintiff himself, who was manager of the Menaul Store and was asked to speak to his staff as part of the investigation against Kestell. UMFs 78-79. Mr. Ulivarri's deposition indicates that Ray St. John, Ulivarri's supervisor, was involved in the investigation against Mr. Kestell and ultimately recommended his discipline. Doc. 52-2 at 43-45 (Ulivarri Dep. 104:14-115:5). Mr. St. John, therefore, may have been Kestell's supervisor. Ultimately, there is no evidence that makes clear who supervised Mr. Kestell. Without any evidence that Mr. Kestell shared the same supervisor as Ulivarri, Plaintiff falls short of his burden to establish Kestell as a similarly situated employee. *See, e.g., Timmerman*, 483 F.3d at 1121 (rejecting purportedly similarly situated employees when plaintiff put forth no evidence to show the employee had the same position or supervisor as the plaintiff).

Even if Kestell was found to be similarly situated, Ulivarri has failed to rule out nondiscriminatory explanations for why Kestell was treated differently than Ulivarri. Based on Walgreens' conclusion that Kestell created fictitious vaccine appointments, he was issued a Final Written Warning but not terminated. UMF 81. This constitutes differential treatment. However, Ulivarri already had a Final Written Warning on his record when he was terminated, UMFs 11-12, and the Court could find no evidence in the record clarifying whether Kestell was previously issued a Final Written Warning, or if this was his first. In *Green v. New Mexico*, the Tenth Circuit found two proffered employees were not similarly situated because they were not probationary employees and the plaintiff was. 420 F.3d 1189, 1195 (10th Cir. 2005). Similarly, Ulivarri had received a Final Written Warning, which informed him that additional disciplinary violations could result in termination. UMFs 11-12. There is no evidence that Kestell had a comparable disciplinary history. Plaintiff therefore failed to rule out the possibility that Kestell was not terminated because

he had fewer disciplinary infractions during his time at Walgreens and had never received a Final Written Warning.

Walgreens also argues that Kestell's conduct was not of "comparable seriousness" because it did not have the same impact as Plaintiff's actions, which, by its own calculations, resulted in over $200,000 of lost revenue. Doc. 52-1 at 24; UMF 57. In Ulivarri's deposition, he recounts that Kestell's conduct blocked patients from getting their vaccines and may have cost the store thousands of dollars. Doc. 52-2 at 43 (Ulivarri Dep. 101:16-102:3). The comparable "seriousness" of the respective employees' conduct is arguably a question for the jury. However, Plaintiff has not produced evidence to dispute Walgreens' account of the lost revenue resulting from Ulivarri's store closures, nor has he produced evidence demonstrating the estimated impact of Kestell's conduct. This falls short of Plaintiff's burden of production at this stage of the litigation and therefore fails to raise a genuine dispute of fact for a jury to resolve at trial.

In sum, Plaintiff's Response to Walgreens' Motion for Summary Judgment does not directly address his race discrimination claim or identify any facts supporting an inference of racial discrimination in his termination. *See* Doc. 56 at 20-21; Doc. 56-1 at 18. Upon an independent review of the record, the Court finds that there is insufficient evidence permitting an inference of racial discrimination. Plaintiff identified two other Walgreens employees who were treated differently, but he has failed to show that they were not members of the protected class (racial minorities) or that Mr. Kestell was similarly situated. And he has identified no additional circumstances that would satisfy this third prong. His prima facie claim for race discrimination therefore fails.

## IV.
## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant Walgreens' Renewed Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**. Specifically, summary judgment is **GRANTED** for Walgreens as to Plaintiff's Title VII and ADEA retaliation claims, his Title VII race discrimination claim, and his intentional infliction of emotional distress claim. Those claims must be dismissed. Summary judgment is **DENIED** as to Plaintiff's claim of age discrimination in his termination and his common law retaliatory discharge claim related to reporting workplace safety concerns. The latter claims, along with Plaintiff's claim of age discrimination in his denied transfer request and common law retaliation in his reporting of pharmacy policy violations, will proceed to trial.

**IT IS SO ORDERED.**

HONORABLE DAVID HERRERA URIAS
UNITED STATES DISTRICT JUDGE